**No. 16-2238**

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO
### No. 1-16-CV-00470-RJ-SMV (Hon. Robert A. Junnell)

---

**HEATHER BURKE,**
        **Plaintiff - Appellant,**

**v.**

**STATE OF NEW MEXICO, EDWYN BURCKLE, in both official and individual capacities as Secretary of the General Services Department, JAY HONE, MICHAEL GALLEGOS, ANGELA DAWSON, BRENDA GUETHS, and KAREN BALTZLEY,**
        **Defendants - Appellees.**

---

### DEFENDANTS–APPELLEES' PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

**HINKLE SHANOR LLP**
Ellen S. Casey
Jaclyn M. McLean
Jaime R. Kennedy
P.O. Box 2068
Santa Fe, NM 87504-2068
Telephone: 505-982-4554
Facsimile:  505-982-8623
ecasey@hinklelawfirm.com
jmclean@hinklelawfirm.com
jkennedy@hinklelawfirm.com
*Attorneys for Defendants - Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. iii

LISTING OF REQUIRED ATTACHMENTS ................................................... vi

   I.     FED. R. APP. 35(b)(1) STATEMENT ......................................... 1

   II.    ARGUMENT ............................................................................... 5

      a.  Background ......................................................................... 6

      b.  In the absence of a search or seizure, there is no Fourth Amendment violation ........................................................ 8

      c.  Even the most liberal readings of Ms. Burke's original and Amended Complaints does not reveal an allegation of governmental search or seizure intruding upon any claimed reasonable expectation of privacy under the Fourth Amendment ........................................ 13

   III.   CONCLUSION ........................................................................... 16

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ................... 17

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS ............................................................................................. 18

CERTIFICATE OF SERVICE ....................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Barry v. City of N.Y.*,
  712 F.2d 1554 (2d Cir. 1983) ..................................................................5

*Becker v. Kroll*,
  494 F.3d 904 (10th Cir. 2007) ...............................................................6

*Boyd v. United States*,
  116 U.S. 616 (1886) ................................................................................4

*California v. Acevedo*,
  500 U.S. 565 (1991) ..............................................................................14

*California v. Ciraolo*,
  476 U.S. 207 (1986) .......................................................................... 9, 10

*Douglas v. Dobbs*,
  419 F.3d 1097 (10th Cir. 2005) .............................................................13

*Gillard v. Schmidt*,
  579 F.2d 825 (3d Cir. 1978) ...................................................................5

*Harajli v. Huron Township*,
  365 F.3d 501 (6th Cir. 2004) ..................................................................5

*Huling v. City of Los Banos*,
  869 F. Supp. 2d 1139 (E.D. Cal. 2012) ................................................11

*Katz v. United States*,
  389 U.S. 347 (1967) ...................................................................... passim

*Mancusi v. DeForte*,
  392 U.S. 364 (1968) ......................................................................... 3, 15

*Minnesota v. Carter*,
  525 U.S. 83 (1998) ................................................................................12

*New Jersey v. T.L.O.*,
  469 U.S. 325 (1985) ..............................................................................14

*Oliver v. United States,*
    466 U.S. 170 (1984) ........................................................................11

*O'Connor v. Ortega,*
    480 U.S. 709 (1987) ................................................... 3, 13, 15

*Pennsylvania v. Mimms,*
    434 U.S. 106 (1977) ..........................................................................4

*Rakas v. Illinois,*
    439 U.S. 128 (1978) ........................................................................10

*Skinner v. Railway Labor Executives' Ass'n,*
    489 U.S. 602 (1989) ................................................... 2, 14

*Smith v. Maryland,*
    442 U.S. 735 (1979) ........................................................................10

*Soldal v. Cook Cty.,*
    506 U.S. 56 (1992) ................................................... 2, 10, 14

*United States v. Angevine,*
    281 F.3d 1130 (10th Cir. 2002) ................................................10

*United States v. Carloss,*
    818 F.3d 988 (10th Cir.) ..........................................................8

*United States v. Chadwick,*
    433 U.S. 1 (1977) ........................................................................14

*United States v. Ford,*
    525 F.2d 1308 (10th Cir. 1975) ..............................................3

*United States v. Gordon,*
    741 F.3d 64 (2014) ................................................... 3, 14

*United States v. Jones,*
    132 S. Ct. 945 (2012) ........................................................6, 9

*United States v. Miller,*
    425 U.S. 435 (1976) ........................................................................14

*United States v. Oliver*,
 363 F.3d 1061 (10th Cir. 2004) ...................................................... 4, 14

*Whalen v. Roe*,
 429 U.S. 589 (1977) ................................................................. passim

*Ysasi v. Brown*,
 3 F. Supp. 3d 1088 (D.N.M. 2014) .................................................... 6

## CONSTITUTIONS & STATUTES

42 U.S.C. Section 1983 ............................................................... passim

U.S. CONST. amend. IV ................................................................ passim

## OTHER AUTHORITIES

10th Cir. R. 35.2(b) ...................................................................... 6

Fed. R. App. 35(b)(1) .................................................................. 2, 7

Fed. R. App. 35(b)(1)(A) ........................................................... 4, 15

Fed. R. App. 35(b)(1)(B) ................................................................ 4

Fed. R. Civ. P. 12(b)(6) ................................................................ 16

Wayne R. LaFave, 1 SEARCH & SEIZURE: A TREATISE ON THE FOURTH
AMENDMENT § 2.1 (5th ed., Oct. 2016 update) .................................. 5, 14

## LISTING OF REQUIRED ATTACHMENTS

| Required Attachments (10th Cir. R. 35.2(b)) | Tab No. |
|---|---|
| Order & Judgment (06/08/2017) | 1 |

## GROUNDS FOR PETITION

### I.    FED. R. APP. 35(b)(1) STATEMENT

The Panel's Order and Judgment affirming in part and reversing in part the district court's granting of Defendants-Appellees' Motion to Dismiss held that Plaintiff-Appellants Heather Burke's 42 U.S.C. Section 1983 Fourth Amendment claim remains viable despite Ms. Burke's failure to allege an underlying governmental search or seizure as required by the plain language of the Fourth Amendment and the Supreme Court and Tenth Circuit jurisprudence regarding same.  *See* Order & Judgment, p. 10 n.2.

Plaintiff's Section 1983 claim in its present form appears to assert that that Defendants violated the Fourth Amendment by disclosing Ms. Burke's personal health-related information to her co-workers and others.  While concluding that Ms. Burke should be granted leave to amend her complaint a second time to add additional details regarding the timing of the disclosures, the Panel expressly rejected Defendants' arguments that further attempts at amendment were futile because the Fourth Amendment does not create a cognizable claim premised on privacy interests in the absence of any allegation that governmental defendants engaged in an unreasonable search or seizure.

In a footnote to its Order and Judgment, the Panel held that a search or seizure is not an essential element of a Section 1983 Fourth Amendment claim as long as

1

the litigant alleges sufficient facts to suggest that he or she generally has a "reasonable expectation of privacy" in whatever is at issue. *See* Order & Judgment, p. 10 n.2. In so doing, the Panel appears to have discounted the plain language of the Fourth Amendment (i.e., "[t]he right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures*, shall not be violated . . ." (emphasis added)) and expanded Fourth Amendment jurisprudence to create a Section 1983 cause of action for the invasion of a Fourth Amendment "right to privacy" in the absence of a search or seizure, a theory previously rejected by the United States Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 604 n.32 (1977).

"[T]he first Clause of the Fourth Amendment protects two types of expectations, one involving searches, the other seizures." *Soldal v. Cook Cty.*, 506 U.S. 56, 62-63 (1992) (internal quotation marks and citation omitted); *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989) ("Before we consider whether the tests in question are reasonable under the Fourth Amendment, we must inquire whether the tests are attributable to the Government or its agents, and *whether they amount to searches or seizures*." (emphasis added)). To date, neither the Supreme Court nor this Court have recognized a Section 1983 cause of action arising under the Fourth Amendment for an employer's alleged disclosure of an employee's personal information in the absence of an underlying search or

seizure. *See, e.g.*, *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987); *Mancusi v. DeForte*, 392 U.S. 364, 369 (1968). Indeed, the Supreme Court has expressly declined to expand the privacy concepts underlying Fourth Amendment protections to create a broader "constitutional privacy right" under the Amendment. *See Whalen*, 429 U.S. at 604 n.32. In *Whalen*, the Supreme Court expressly rejected a similar attempt to expand the Fourth Amendment to encompass a cognizable claim for violation of a generalized "right to privacy" which could be actionable in the absence of a search or seizure. 429 U.S. at 604 n.32. Likewise, in *Katz v. United States*, 389 U.S. 347, 350 (1967) the Supreme Court counseled that "the Fourth Amendment cannot be translated in to a general constitutional 'right to privacy'" and that the Amendment protects individual privacy against only "*certain kinds of governmental intrusion*." (emphasis added).

The Tenth Circuit has consistently echoed the Supreme Court's recognition that the gravamen of any Fourth Amendment violation is an unreasonable search or seizure. *See United States v. Gordon*, 741 F.3d 64, 69 (2014) ("The Fourth Amendment prohibits unreasonable searches and seizures."). In *United States v. Ford*, 525 F.2d 1308, 1310 (10th Cir. 1975), the Tenth Circuit examined the Supreme Court's Fourth Amendment jurisprudence and recognized that the Supreme Court "first vitalized the Fourth Amendment and particularly the proscription against 'unreasonable searches and seizures,'" in *Boyd v. United States*, 116 U.S. 616, 624

3

(1886). In *United States v. Oliver*, 363 F.3d 1061, 1066 (10th Cir. 2004), this Court similarly recognized that "[t]he 'touchstone' of Fourth Amendment analysis 'is always the reasonableness in all circumstances of *the particular governmental invasion* of a citizen's personal security.'" (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)) (emphasis added). Accordingly, if there is no governmental invasion of personal security by means of an unreasonable search and seizure, there is no Section 1983 cause of action for a claimed violation of the Fourth Amendment. Defendants are not aware of any case where this Court or any other has allowed a Section 1983 claim based on a Fourth Amendment "right to privacy" to proceed without the essential assertion of a governmental search or seizure.

For these reasons, the Panel decision conflicts with decisions of the United States Supreme Court and the Tenth Circuit, and therefore consideration by the Tenth Circuit en banc is "necessary to secure and maintain uniformity of the Court's decisions." Fed. R. App. 35(b)(1)(A). Moreover, although unpublished, the Panel's decision is also of exceptional importance. *See* Fed. R. App. 35(b)(1)(B). For one, the decision conflicts "with the authoritative decisions of other United States Courts of Appeals that have addressed the issue."[1]  *Id.* Moreover, beyond improperly

---

[1] *See, e.g.*, *Harajli v. Huron Township*, 365 F.3d 501, 505 (6th Cir. 2004) ("In analyzing any Fourth Amendment issue, the threshold question is whether there has been either a 'search' or a 'seizure.'"); *Barry v. City of N.Y.*, 712 F.2d 1554, 1564

confining Defendants to a law of the case that contradicts established precedent, the Panel's rejection of a search or seizure requirement in the Fourth Amendment has implications that go well beyond the parties in the instant case as it effectively rewrites hundreds of years of Fourth Amendment jurisprudence.

## II.    ARGUMENT

> The right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures*, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

> U.S. CONST. amend. IV (emphasis added).

> Central to an understanding of the Fourth Amendment, therefore, is a perception of what [governmental] activities, under what circumstances and infringing upon what areas and interests, constitute either a search or a seizure within the meaning of that Amendment.

> Wayne R. LaFave, 1 SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.1 (5th ed., Oct. 2016 update).

---

(2d Cir. 1983) ("[E]ven if plaintiffs have a reasonable expectation of privacy with respect to public disclosure, the Fourth Amendment prohibits only unreasonable inquiries."); *Gillard v. Schmidt*, 579 F.2d 825, 828 (3d Cir. 1978) ("[T]he Fourth Amendment embraces privacy rights asserted in the context of an unreasonable government search.").

a.     **Background**

In this case, Ms. Burke, sued Defendants alleging, *inter alia*, a breach of her Fourth Amendment "right to privacy" under 42 U.S.C. § 1983. The gravamen of Ms. Burke's claimed Fourth Amendment violation is that her then-supervisor, Defendant Karen Baltzley, "repeatedly disclosed information pertaining to Ms. Burke's medical condition, treatment, medical accommodation, disciplinary action and other private details with coworkers, contractors and the general public." (Aplt. App. at 87 [Compl. at ¶ 255]). Ms. Burke further alleges that Defendants "failed to protect Ms. Burke's and other State of New Mexico employees and dependents [sic] private health and personal information." (Aplt. App. at 88 [Compl. at ¶ 258]).

Ms. Burke does not identify or otherwise allege any actions that could meet the search and seizure requirements of the Amendment[2] anywhere in her 78-page, 268-paragraph Complaint or 44-page, 246-paragraph Amended Complaint.[3] (Aplt.

---

[2] Courts recognize a seizure "only when criminal charges are coupled with another significant restraint on liberty, such as restrictions on travel." *Becker v. Kroll*, 494 F.3d 904, 916 (10th Cir. 2007) (citing cases). A "search occurs either where the government, to obtain information, trespasses on a person's property or where the government violates a person's subjective expectation of privacy that society recognizes as reasonable to collect information." *Ysasi v. Brown*, 3 F. Supp. 3d 1088, 1127 (D.N.M. 2014) (citing *United States v. Jones*, 132 S. Ct. 945, 947 (2012)).

[3] Indeed, the allegations of Ms. Burke's Complaint demonstrate that she openly shared information concerning her health and other personal information not only to Ms. Baltzley, but to other Defendants, co-workers, and the public. (Aplt. App. at 29, 33, 38-39, 51-53, 55-59, 61-66, 68-70, 72-73, 78-80 [Compl. at ¶¶ 30, 59, 68,

App. at 13-90, 181-235.)  Despite this, the Panel held that Ms. Burke may state a claim under Section 1983 for a violation of the Fourth Amendment apparently premised solely on Defendants' alleged disclosure of Burke's personal medical information to others.[4]  Order & Judgment, pp. 9-11.  In so doing, the Panel rejected Defendants' argument that an essential element of any Fourth Amendment claim is a search or a seizure, and that Ms. Burke's failure to allege either was fatal to her claim:

> To the extent the defendants argue that Ms. Burke's privacy claim fails because she did not allege some physical intrusion upon her private documents or medical records, we note that "[t]he Fourth Amendment protects against the government's 1) unprivileged trespass on property expressly protected by the Fourth Amendment— 'persons, houses, papers, and effects'—for the purpose of conducting a search or seizure; *and* 2) infringement of an individual's reasonable expectation of privacy." Ms. Burke's allegations were based on the latter theory.

---

101, 105, 107, 116-17, 119-20, 126, 130-35, 143, 147, 152-54, 156, 159, 172-74, 177-79, 183, 186, 195, 213-15]); *see, e.g.*, *Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

[4] The Panel did not hold that Ms. Burke had properly stated a claim for the violation of her Fourth Amendment rights, but instead held that she should be given leave to amend her complaint for a second time to cure certain factual deficiencies identified by the Court in its analysis of her Complaint and Amended Complaint.  Order & Judgment, pp. 10-11.

Order & Judgment, p. 10 n.2 (quoting *United States v. Carloss*, 818 F.3d 988, 992 n.2 (10th Cir.) (emphasis added), *cert. denied*, 137 S. Ct. 231 (2016)).[5]   While the Panel is certainly correct that the Fourth Amendment protects an individuals' "reasonable expectation of privacy" under certain circumstances, Ms. Burke may not state such a claim without also asserting that conduct recognized as constituting an unreasonable search or seizure led to the infringement of her reasonable expectation of privacy.  *See generally Katz*, 389 U.S. at 360 (Harlan, J., concurring). Defendants respectfully assert that the Panel erred in its apparent holding that the "reasonable expectation of privacy" protected by the Fourth Amendment does not require a search or seizure to be actionable.

### b.    In the absence of a search or seizure, there is no Fourth Amendment violation.

The doctrine that Fourth Amendment protections encompass more than governmental trespass on a citizen's personal property rights has its origins in *Katz v. United States*, 389 U.S. 347 (1967).  In that case, the Court held that activities of FBI agents in attaching an electronic listening and recording device to the outside of a public telephone booth violated the defendant's Fourth Amendment rights.  *Id.* at 359.   In deviating from the Supreme Court's former trespass/property-based

---

[5] In *Carloss*, the Tenth Circuit was concerned with the first theory, i.e., the trespass theory of the Fourth Amendment, and did not address or analyze the second theory relied on by the Panel in this appeal.  818 F.3d at 992 n.2.

approach to the Fourth Amendment, the Court in *Katz* signaled an expansion of the coverage of the Fourth Amendment to search and seizures by the government which violate a person's "reasonable expectation of privacy." *Id.* at 360 (Harlan, J., concurring); *see also United States v. Jones*, 565 U.S. 400, 405-06 (2012) ("Our later cases have applied the analysis of Justice Harlan's concurrence in [*Katz*], which said that a violation occurs when government officers violate a person's reasonable expectation of privacy." (internal quotation marks and citation omitted)).

For example, in *California v. Ciraolo*, 476 U.S. 207, 209 (1986), police officers flew a plane over the defendant's backyard wherein they observed marijuana plants growing. Thereafter, the police obtained a warrant and seized the plants. *Id.* at 209-10. The issue before the Supreme Court was whether police officers violated the defendant's Fourth Amendment rights by the aerial observation of his backyard by airplane, which while not a trespass, may nonetheless violate a homeowner's reasonable expectations of privacy. *Id.* at 211. In considering the issue, the Court first observed that "[t]he touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy." *Id.* at 211 (quoting *Katz*, 389 U.S. at 360). As outlined by the *Ciraolo* Court, this expectation of privacy is evaluated by courts in a two-part inquiry: "first, has the individual manifested a subjective expectation of privacy *in the object of the challenged search*? Second, is society willing to recognize that expectation as

9

reasonable?" *Id.* (emphasis added) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). Under *Katz* and its progeny, a violation of one's reasonable expectation of privacy may trigger a Fourth Amendment violation only when that privacy interest has been intruded upon by an unreasonable governmental search or seizure.

This understanding was echoed by the Tenth Circuit in *United States v. Angevine*, 281 F.3d 1130, 1135 (10th Cir. 2002), where the Court held that a college professor did not have a reasonable expectation of privacy in his office computer, the pornographic contents of which were *seized* by police. In so doing, the Court recognized that in order "[t]o establish a Fourth Amendment violation, the defendant must prove 'a legitimate expectation of privacy' *in the place searched or the item seized*." *Id.* at 1134 (emphasis added) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

As made clear by the *Katz*-line of Fourth Amendment cases, the Amendment's protections extend to areas in which the individual has a "reasonable expectation of privacy," but there can be no claim for a privacy-based violation of the Fourth Amendment in the absence of *governmental search or seizure*. *See Soldal*, 506 U.S. at 64 ("[T]he *Katz* Court stated that the Fourth Amendment can neither be translated into a provision dealing with constitutionally protected areas nor into a general constitutional right to privacy."); *Ciraolo*, 476 U.S. at 219 ("*Katz* announced a standard under which *the occurrence of a search* turned not on the

physical position of the police conducting the surveillance, but on whether the surveillance in question had invaded a constitutionally protected reasonable expectation of privacy." (emphasis added)).  That is, merely alleging a "reasonable expectation of privacy" in property, communications, or physical or electronic spaces, etc. is not sufficient where the proponent of the Fourth Amendment claim does not also allege conduct fitting within the rubric of a governmental search or seizure that intrudes upon that expectation.[6]  *See Oliver v. United States*, 466 U.S. 170, 176 n.6 (1984) ("This Court frequently has relied on the explicit language of the Fourth Amendment as delineating the scope of its affirmative protections. . . .

---

[6] In arguing this point in its Answer Brief, Defendants relied in part on the reasoning of *Huling v. City of Los Banos*, 869 F. Supp. 2d 1139, 1147 n.1 (E.D. Cal. 2012), which directly addressed and rejected the same argument made by Burke below. Although the Panel did not discuss or distinguish the *Huling* court's analysis, it is nonetheless instructive on the issue before the Court:

> Plaintiff's assertion in his opposition that the Fourth Amendment is implicated here because it applies whenever an individual has a "reasonable expectation of privacy,". . . is completely misplaced. It is true that the Fourth Amendment only extends to situations in which an individual has a "reasonable expectation of privacy," but that is simply a necessary precondition to a Fourth Amendment violation. In addition, there must be an unlawful search or seizure that invades the plaintiff's reasonable expectation of privacy. Plaintiff not alleged an unlawful search or seizure in this case.

*Katz*' 'reasonable expectation of privacy' standard did not sever Fourth Amendment doctrine from the Amendment's language."); *Whalen*, 429 U.S. at 604 n.32 (rejecting plaintiffs' arguments that the Fourth Amendment protects against disclosure of personal matters in the absence of a governmental intrusion into same); *cf. Minnesota v. Carter*, 525 U.S. 83, 91-92 (1998) (Scalia, J., concurring) (criticizing the application of the "legitimate expectation of privacy" standard—"a consideration that is often relevant to whether a search or seizure covered by the Fourth Amendment is 'unreasonable'—to the threshold question whether a search or seizure covered by the Fourth Amendment has occurred").

In *Whalen*, a group of physicians and patients challenged the constitutionality of a number of New York statutes that permitted the state government to maintain a database of the name and address of all individuals who purchased certain types of prescription drugs. 429 U.S. at 591. Among other things, the plaintiffs argued that governmental maintenance of a database of information regarding all persons who have obtained prescriptions for certain drugs violated "constitutionally protected rights of privacy" under the Fourth and Fourteen Amendment based on a risk of disclosure of that medical information to others. *Id.* The Supreme Court rejected the plaintiff's reliance on the Fourth Amendment as a source of a constitutional privacy right as the Amendment's protections are only triggered by "affirmative, unannounced, narrowly focused *intrusions* into individual privacy during the course

12

of criminal investigations." *Id.* at 604 n.32 (emphasis added).  According to the Court, "[w]e have never carried the Fourth Amendment's interest in privacy as far as the Roe appellees would have us.  We decline to do so now." *Id.*  As made clear by *Whalen*, the constitutional right of privacy protected by the Fourth Amendment is limited to protecting against governmental intrusions, i.e., unreasonable searches or seizures, and does not extend to protect more generalized privacy interests, such as the disclosure of medical information.

### c. Even the most liberal readings of Ms. Burke's original and Amended Complaints does not reveal an allegation of governmental search or seizure intruding upon any claimed reasonable expectation of privacy under the Fourth Amendment.

"Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer."[7]  *O'Connor*, 480 U.S. at 717. Individuals may also have a "reasonable expectation of privacy" in certain personal information, such as medical records.  *See, e.g.*, *Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) (recognizing a right to privacy in an individual's prescription drug records).  However, an assertion of those privacy rights does not support a Fourth Amendment claim unless and until the government intrudes upon those rights

---

[7] Often, however, employees' Fourth Amendment rights are reasonably constrained by the "operational realities of the workplace." *See, e.g.*, *O'Connor*, 480 U.S. at 717 ("Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation.").

by unlawful search or seizure. *See Whalen*, 429 U.S. at 604 n.32; *see also Soldal*, 506 U.S. at 62-63; *Skinner*, 489 U.S. at 614; *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985) ("[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable[.]"); *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (stating that a court's "fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances"), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *Gordon*, 741 F.3d at 69; *Oliver*, 363 F.3d at 1066; *see generally* 1 SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.1 ("The words 'searches and seizures,' . . . are terms of limitation.  Law enforcement practices are not required by the Fourth Amendment to be reasonable unless they are either 'searches' or 'seizures.'" (internal quotation marks and footnote omitted)).

Here, Ms. Burke does not allege that any of the personal information purportedly disclosed by Ms. Baltzley consisted of private documents or records improperly taken from Plaintiff's possession. *See United States v. Miller*, 425 U.S. 435, 440 (1976) (observing that documents that were not the respondent's "private papers" or otherwise within his "ownership or possession," and therefore did not "fall within a protected zone of privacy").  Ms. Burke also does not allege that any Defendant somehow came into possession of such information through an improper search or seizure.  *See, e.g.*, *Mancusi*, 392 U.S. at 369 ("It has long been settled that

14

one has standing to object to a search of his office, as well as of his home."). In the absence of an allegation of some antecedent governmental search or seizure, Ms. Burke's Fourth Amendment claim is not viable. *See O'Connor*, 480 U.S. at 715 ("Searches and seizures by government employers or supervisors of the private property of their employees, therefore, are subject to the restraints of the Fourth Amendment.").

The Panel's expansion of the Fourth Amendment's protections beyond unreasonable governmental searches or seizures to include more generalized privacy interests against the disclosure of an employee's medical and other personal information by a supervisor conflicts with existing Supreme Court and Tenth Circuit case law, as demonstrated above. Accordingly, consideration by the Tenth Circuit en banc is "necessary to secure and maintain uniformity of the Court's decisions." Fed. R. App. 35(b)(1)(A). Consideration by the Tenth Circuit en banc is also necessary because the Panel's decision is of exceptional importance in that the Panel's rejection of a search or seizure requirement in the Fourth Amendment in favor of a broader and generalized "right to privacy" upends settled Fourth Amendment jurisprudence. In this case, the decision, if left standing, will drain judicial and party resources in addressing a Section 1983 Fourth Amendment cause of action that does not and cannot state a claim, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

15

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this matter be reheard by the Panel or reheard en banc.

Respectfully submitted,

**HINKLE SHANOR LLP**

By:   /s/ Jaclyn M. McLean
Ellen S. Casey
Jaclyn M. McLean
Jaime R. Kennedy
P.O. Box 2068
Santa Fe, NM 87504-2068
Telephone: 505-982-4554
Facsimile:  505-982-8623
ecasey@hinklelawfirm.com
jmclean@hinklelawfirm.com
jkennedy@hinklelawfirm.com

*Attorneys for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   [**X**] this document contains 3,742 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [**X**] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 (Version 1705, Build 8201.2102) in Times New Roman 14-Point Font.


Date:  June 22, 2017          By*: /s/ Jaclyn M. McLean*
                              Ellen S. Casey
                              Jaclyn M. McLean
                              Jaime R. Kennedy
                              P.O. Box 2068
                              Santa Fe, NM 87504-2068
                              Telephone: 505-982-4554
                              Facsimile:  505-982-8623
                              ecasey@hinklelawfirm.com
                              jmclean@hinklelawfirm.com
                              jkennedy@hinklelawfirm.com

                              *Attorneys for Defendants-Appellees*

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing Defendants-Appellees' Petition for Panel Rehearing and Rehearing En Banc, as submitted in digital form via the court's ECF system, is an exact copy of the written document filed with the Clerk and has been scanned for viruses with the Sophos AntiVirus Version 11.5.4, last updated 6/22/2017 9:34:14 AM and, according to the program, is free of viruses. In addition, I certify all required privacy redactions have been made.

Date: June 22, 2017

By: */s/ Jaclyn M. McLean*
Ellen S. Casey
Jaclyn M. McLean
Jaime R. Kennedy
P.O. Box 2068
Santa Fe, NM 87504-2068
Telephone: 505-982-4554
Facsimile: 505-982-8623
ecasey@hinklelawfirm.com
jmclean@hinklelawfirm.com
jkennedy@hinklelawfirm.com

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2017, I electronically filed the foregoing *Defendants-Appellees' Petition for Panel Rehearing and Rehearing En Banc* using the Court's CM/ECF system which will send notification of such filing to all ECF participants by operation of the Court's electronic filing system.  A copy of Defendants-Appellees' Petition for Rehearing En Banc was e-mailed to:

> Heather Burke
> 2268 Calle Cuesta
> Santa Fe, New Mexico 87505
> hbobloblaw@gmail.com

I also certify that six (6) copies of the Defendants-Appellees' Petition for Panel Rehearing and Rehearing En Banc were also sent via Federal Express Next Business Day Delivery to:

> Clerk of Court
> United States Court of Appeals, Tenth Circuit
> Byron White United States Courthouse
> 1823 Stout Street
> Denver, CO 80257

*/s/ Jaclyn M. McLean*
Jaclyn M. McLean

FILED
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**June 8, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

HEATHER BURKE,

     Plaintiff - Appellant,

v.

STATE OF NEW MEXICO; EDWYNN
BURCKLE, in both his official and
individual capacities as Secretary of the
General Services Department; JAY HONE;
MICHAEL GALLEGOS; ANGELA
DAWSON; BRENDA GUETHS; KAREN
BALTZLEY, in their individual capacities,

     Defendants - Appellees.

No. 16-2238
(D.C. No. 1:16-CV-00470-RJ-SMV)
(D. N.M.)

---

### ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.

---

    In this employment case, Heather Burke appeals pro se from a district court order

that dismissed her complaint and denied leave to amend. Exercising jurisdiction under

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

TAB 1

28 U.S.C. § 1291, we affirm in part, reverse in part, vacate in part, and remand for further proceedings on her privacy, wage-discrimination, and whistleblowing claims.

### BACKGROUND

Ms. Burke began working for the New Mexico General Services Department (GSD) in January 2013 "as an IT Generalist 2." R. at 25. Her job duties included "provid[ing] IT support and customer services for GSD." *Id.* at 277. She was supervised by Karen Baltzley, who reported directly to GSD Secretary Edwynn Burckle.

Ms. Burke claims that she "surveyed the pay levels for her department" and learned that "[t]he men made 9-12% more than the women in the same positions." *Id.* at 26. She also allegedly learned that other employees had committed "malfeasance in public office," "violat[ed] . . . state law and administrative code," engaged in "gross misconduct and gross mismanagement of staff and public funds, and [committed] abuses of authority." *Id.* at 14. When she reported these issues "to her superiors and to others[,] . . . the [d]efendants retaliated against [her] by decreasing work responsibilities, assignments, benefits, income and creating and maintaining a hostile work environment." *Id.*

Ms. Burke also reported one of her coworkers for acting in a "threatening manner" and for "put[ting] sensitive personal information entrusted to GSD at risk of theft, exposure, or other breach that could result in great harm." *Id.* Instead of remedying these issues, Supervisor Baltzley notified Ms. Burke's harasser of the claims she had made against him, *id.* at 37, gave the harasser advance notice of a security audit, *id.* at 53, and directed him to "secretly record[ ] [Ms. Burke]," *id.* at 64.

2

In December 2014, Ms. Burke was diagnosed with cancer and several months later she began chemotherapy.  She contends that GSD responded by "increas[ing] [its] retaliatory and hostile behavior."  *Id.* at 17.  Nevertheless, "[s]he continued to uncover numerous security issues that she dutifully reported."  *Id.*

On "several" occasions around May 2015, Supervisor Baltzley "shared Ms. Burke's personal health info" with others "despite Ms. Burke asking her not to."  *Id.* at 65.  When Ms. Burke "confront[ed] [Supervisor] Baltzley about this," she "was accused of 'insubordination.'"  *Id.*

On an unspecified night after work, Ms. Burke found in the parking lot a piece of paper bearing her name, social-security number, date of birth "and medical diagnosis of 'Breast Cancer'" along with the "same information for 20 or so other people."  *Id.* at 22.  She reported her finding, but "GSD did nothing."  *Id.* at 23.

In June 2015, "Ms. Burke was placed under investigation . . . for an oversight she made almost exactly a year before."  *Id.* at 18.  She was ultimately suspended for a week without pay.  Ms. Burke's union declined to arbitrate the suspension, leaving her "no reasonable method to appeal th[e] . . . disciplinary action."  *Id.* at 347.

When Ms. Burke returned to work, the retaliation and hostility continued.  Fearing that she was going to "be[ ] fired for having cancer," Ms. Burke contacted a reporter and revealed "information about her health and other [private] details" for newspaper articles that appeared in September and October 2015.  *Id.* at 69; *see also id.* at 70.

In May 2016, Ms. Burke filed suit in state court against the State of New Mexico, Secretary Burckle, Human Resources Director Michael Gallegos, Human Resources

Manager Brenda Gueths, Supervisor Baltzley, Jay Hone, and Angela Dawson. The complaint comprised 77 pages and recounted Ms. Burke's employment experiences at GSD in almost day-to-day detail. She advanced federal claims for equal-protection and privacy violations, and state law claims for wage discrimination/retaliation and whistleblower retaliation. Secretary Burckle removed the case to federal court, where the defendants moved to dismiss Ms. Burke's complaint.

In response, Ms. Burke moved to amend her complaint. The proposed amended complaint substituted GSD for the State of New Mexico and added another individual to the original list of defendants. While the body of the new complaint shrank to 44 pages, it (1) added a federal wage-discrimination/retaliation claim that mirrored the existing state law claim; (2) attacked her union's arbitration decision as violating due process and the union's collective-bargaining agreement; and (3) included 79 pages of exhibits. The proposed amended complaint revealed that in July 2016, Ms. Burke had "accepted [a] constructive discharge." R. at 314.

The district court granted the defendants' motion, dismissed all of Ms. Burke's claims, and denied leave to amend as futile. Ms. Burke appeals.

## DISCUSSION
## I. Standards of Review

We review a Rule 12(b)(6) dismissal de novo. *Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). In doing so, "we accept as true the well pleaded factual allegations and then determine if the plaintiff has provided enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir.

4

2014) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

"The 12(b)(6) standard does not require that [the] Plaintiff establish a prima facie case in [the] complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1172 (10th Cir. 2015) (brackets and internal quotation marks omitted). But the elements of a prima facie case may be used to shed light upon a claim's plausibility. *See Kahlik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

As for leave to amend, it should generally be freely granted. *See Jones v. Norton*, 809 F.3d 564, 579 (10th Cir. 2015), *cert. denied*, 137 S. Ct. 197 (2016). But it should be denied when amendment would be futile, in that "the complaint, as amended, would be subject to dismissal." *Fields v. City of Tulsa,* 753 F.3d 1000, 1012 (10th Cir. 2014) (internal quotation marks omitted). And where, as here, leave to amend is denied due to futility, we review for an abuse of discretion, which "includes de novo review of the legal basis for the finding of futility." *Cohen v. Longshore*, 621 F.3d 1311, 1314 (10th Cir. 2010) (internal quotation marks omitted).

Because Ms. Burke "is pro se, we liberally construe h[er] filings, but we will not act as h[er] advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013). Further, pro se litigants must adhere to the same procedural rules as other litigants. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

5

## II.  42 U.S.C. § 1983
### A.  Eleventh Amendment Immunity

The district court concluded that it lacked jurisdiction over Ms. Burke's claims

against the State of New Mexico because the state is immune from suit under the

Eleventh Amendment.  *See Frazier v. Simmons*, 254 F.3d 1247, 1252-53 (10th Cir.

2001).  Ms. Burke correctly argues that the district court indeed had jurisdiction

because a state's "voluntary removal constitutes consent to have the claim heard in a

federal forum." *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014).  But

Ms. Burke forfeited her removal argument by not raising it in the district court.

*See Fish v. Kobach*, 840 F.3d 710, 729 (10th Cir. 2016) (observing that "[i]f a new

theory simply wasn't raised before the district court, we usually hold it forfeited" and

will not reverse absent "a plainly erroneous result" (brackets and internal quotation

marks omitted)).  And because she does not seek plain-error review, the argument is

waived on appeal.  *See United States v. MacKay*, 715 F.3d 807, 831 (10th Cir. 2013)

("In this Circuit, the failure to argue for plain error and its application on appeal . . .

surely marks the end of the road for an argument for reversal not first presented to

the district court." (internal quotation marks omitted)); *see also Muscogee (Creek)*

*Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1228 n.3 (10th Cir. 2010) (declining to consider

an argument on waiver grounds that sought to establish that the sovereign had waived

Eleventh Amendment immunity); *Sydnes v. United States*, 523 F.3d 1179, 1183

(10th Cir. 2008) (noting that "the party asserting jurisdiction bears the burden of proving

that sovereign immunity has been waived").

The district court also relied on the Eleventh Amendment to dismiss Ms. Burke's § 1983 claims against Secretary Burckle in his official capacity. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). But as far as we can tell, Ms. Burke's complaint advances no official-capacity § 1983 claims against Secretary Burckle. Rather, the complaint indicates that the § 1983 claims are brought against the defendants, including Secretary Burckle, "in their individual capacities." R. at 85-88. And on appeal, Ms. Burke represents that she brought only individual-capacity § 1983 claims against Secretary Burckle.[1]

Thus, although the district court erroneously believed it lacked jurisdiction over the State of New Mexico, we will affirm the state's dismissal, as Ms. Burke has waived the error. As for the district court's dismissal of the non-existent claims against Secretary Burckle in his official capacity, we vacate the district court's judgment in that regard.

## B. Equal Protection

The district court dismissed Ms. Burke's equal-protection claim because she failed to allege the personal involvement of any defendant. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (internal quotation marks omitted)). We agree with that determination.

---

[1] Although there are no official capacity § 1983 claims in the complaint, we remind the district court that the dismissal of such a claim on jurisdictional grounds must be *without* prejudice. *See Colby*, 849 F.3d at 1278.

7

Ms. Burke alleged that "the Defendants" were aware of "discriminatory difference[s] in pay" and "gender based harassment," yet failed to remedy those issues and instead "retaliate[d] against [her] for reporting" them. R. at 85, 86. But she did not allege how any particular defendant treated her differently based on her gender. To state a plausible § 1983 equal-protection claim, a plaintiff must allege facts indicating how each defendant was personally responsible for treating her "differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). This she did not do.

The only individual Ms. Burke specifically mentioned was Secretary Burckle. She alleged that he "failed to properly train and discipline his staff in all matters in connection with violations of [her] constitutional rights." R. at 86. But she did not allege "an affirmative link between [Secretary Burckle] and the constitutional violation." *Keith v. Koerner*, 843 F.3d 833, 838 (10th Cir. 2016) (internal quotation marks omitted). In other words, she alleged no "specific deficiency in" Secretary Burckle's training regimen that was "closely related to h[er] ultimate injury" and that "actually caused" unequal treatment. *Id.* at 839 (internal quotation marks omitted)

Ms. Burke is correct in arguing that deliberate indifference to known sexual harassment can, under certain circumstances, serve as a basis for supervisory liability under an equal-protection theory. *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999). But she has not alleged the facts necessary to proceed under that theory. She must show how each defendant who occupied a supervisory role "actually

. . . acquiesced in" her harassment.  *Id.* (internal quotation marks omitted).  As we have indicated, "direct personal responsibility" is required for *any* plausible § 1983 claim. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).  It is insufficient to allege merely that a supervisor had "knowledge of [a] subordinate's discriminatory purpose." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Thus, the district court did not err in dismissing Ms. Burke's equal-protection claim.  Nor did the district court abuse its discretion in denying leave to amend, as Ms. Burke's proposed amended complaint did not cure the deficiencies we have identified.

### C.  Right of Privacy

Ms. Burke alleged that Supervisor Baltzley "repeatedly disclosed information pertaining to [her] medical condition, treatment, medical accommodation, disciplinary action and other private details with coworkers, contractors and the general public."  R. at 87.  Secretary Burckle, Dawson, and Hone were allegedly deliberately indifferent to Supervisor Baltzley's conduct and "failed to provide training or discipline . . . to prevent reoccurrence of these constitutional violations."  *Id.*  We conclude that Ms. Burke's privacy claim, which she advances under the Fourth Amendment, is too speculative to proceed as pled.

Specifically, it is not entirely clear when the revelations of health information occurred or who was responsible.  Timing is critical because Ms. Burke divulged the same information to a newspaper reporter who used it for two published stories.  "What a person knowingly exposes to the public, even in his own home or office, is not a subject

9

of Fourth Amendment protection." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1147 (10th Cir. 2014) (internal quotation marks omitted).[2]

Thus, to the extent Ms. Burke revealed her private information to the reporter *before* a defendant disclosed it to a third party, Ms. Burke cannot complain. At most, the complaint identifies May 2015 in regard to one or more of Supervisor Baltzley's revelations. The complaint is silent, however, as to when Ms. Burke spoke to the reporter. Further, no date is provided for the evening on which Ms. Burke found her personal information on a paper in GSD's parking lot. And there are no allegations as to who was personally responsible for that revelation. As we have already made clear, § 1983 requires "personal involvement in the alleged constitutional violation." *Brown*, 662 F.3d at 1163.

To the extent Ms. Burke complains that Secretary Burckle, Dawson, and Hone are liable for Baltzley's alleged misconduct based on deliberate-indifference or failure-to-train theories, there are no allegations affirmatively linking their conduct to the revelation of Ms. Burke's private information. The fact that they may supervise Baltzley is insufficient. *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) ("[A]

---

[2] To the extent the defendants argue that Ms. Burke's privacy claim fails because she did not allege some physical intrusion upon her private documents or medical records, we note that "[t]he Fourth Amendment protects against the government's 1) unprivileged trespass on property expressly protected by the Fourth Amendment—'persons, houses, papers, and effects'—for the purpose of conducting a search or seizure; *and* 2) infringement of an individual's reasonable expectation of privacy." *United States v. Carloss*, 818 F.3d 988, 992 n.2 (10th Cir.) (emphasis added), *cert. denied*, 137 S. Ct. 231 (2016). Ms. Burke's allegations were based on the latter theory.

supervisory relationship alone is insufficient for liability under § 1983[.]"); *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").

Thus, the district court did not err in dismissing Ms. Burke's privacy claim.  Nor did the district court abuse its discretion in denying leave to amend insofar as the proposed amended complaint did not materially alter her claim.  But there were enough allegations in those complaints to warrant another opportunity at amendment.  *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (observing that "pro se parties generally should be given leave to amend" unless "it is obvious that the plaintiff cannot prevail on the facts . . . alleged and it would be futile to" provide the chance to amend (internal quotation marks omitted)).  Thus, on remand, Ms. Burke should be given a chance to amend her privacy claim to cure the deficiencies noted above.

### D.  Due Process

The district court rejected Ms. Burke's due-process claim in the proposed amended complaint because she failed to allege the defendants' personal involvement. Indeed, Ms. Burke complained only that her union's "withdr[awal] from th[e] arbitration" of her suspension left her "with no reasonable method to appeal."  R. at 347.  Given the absence of allegations showing personal involvement by any of the defendants in her

inability to appeal the suspension, there was no abuse of discretion in denying leave to amend.[3]

### III.  Labor Management Relations Act (LMRA)

The LMRA authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a).  Ms. Burke alleged in her proposed amended complaint that the defendants violated the collective bargaining agreement with her union by "severely disciplin[ing] [her] for an unintentional infraction" and taking "adverse action against [her] for her Whistleblower complaints."  R. at 348-49.  Further, she alleged that her union refused to remedy these violations of the collective bargaining agreement.  Because Ms. Burke's allegations "combine[d] two conceptually independent causes of action, the first against the company for breach of the contract (a standard [LMRA] § 301 claim [codified at 29 U.S.C. § 185(a)]) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee)," her claim constituted a hybrid action.  *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998).

The district court did not recognize the hybrid nature of Ms. Burke's claim, and it concluded the claim could not proceed without Ms. Burke's union as a named defendant.

---

[3] Insofar as Ms. Burke argues on appeal that her constructive discharge was a violation of due process, she did not plead any such claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Ms. Burke correctly notes on appeal that in a hybrid § 301 case she "need not sue both

h[er] union and former employer in the same case, and [s]he may choose to seek damages

against only one of the potential defendants." *Id.* at 1239.

In any event, we conclude that Ms. Burke's claim fails because she proposed suing

GSD, which does not qualify as an employer under the LMRA. Specifically, the LMRA

excludes from the definition of "employer" "any State or political subdivision thereof."

29 U.S.C. § 152(2). Ms. Burke alleged that "GSD is a division of the Executive Branch

of the State of New Mexico Government." R. at 314. Further, we note that GSD was

established by the State of New Mexico "to make state government more efficient and

responsive through consolidating certain state government service functions[ ] and . . . to

administer laws relating to services for governmental entities." N.M. Stat. Ann. § 9-17-2.

GSD is thus a political subdivision of the State of New Mexico. Denial of leave to

amend to pursue an LMRA claim was therefore appropriate.

## IV.  Equal Pay
### A.  Wage Discrimination

The district court analyzed Ms. Burke's claims asserting a violation of New

Mexico's Fair Pay for Women Act (FPWA) under the rubric of the federal Equal Pay Act

(EPA), given the statutes' similarity. *Compare* N.M. Stat. Ann. § 28-23-3(A) (FPWA

prohibiting discrimination "between employees on the basis of sex by paying wages to

employees in the establishment at a rate less than the rate that the employer pays wages to

employees of the opposite sex in the establishment for equal work on jobs the

performance of which requires equal skill, effort and responsibility and that are

13

performed under similar working conditions") *with* 29 U.S.C. § 206(d)(1) (EPA same).[4]

Using that approach, the district court determined that Ms. Burke had "stated facts

relative to the conclusion that men were paid more than women for the same position."

R. at 487.

But the district court dismissed Ms. Burke's FPWA claim and denied leave to

amend to include an EPA claim, explaining that Ms. Burke had "lump[ed] Defendants

together," offering no "specificity as to which Defendants knew what and when." *Id.* at

487. We conclude that the district court relied on faulty reasoning.

First, whether an employer acted with discriminatory intent is not relevant in an

EPA case. *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1310-11 (10th Cir. 2006)

(observing that "[t]he EPA[ ] . . . impos[es] a form of strict liability on employers who

pay males more than females for performing the same work").

Second, a plaintiff need only "plead[ ] factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). As the district court

acknowledged, Ms. Burke alleged she was paid less than a male colleague for "the exact

same work" based solely on her sex, R. at 83. Further, Ms. Burke specifically targeted

GSD as responsible for the wage discrimination. *See id.* at 83 (alleging that "GSD has no

---

[4] Given the dearth of New Mexico case law discussing the FPWA and the consensus among the parties and the district court that the FPWA and EPA are coterminous, we will address Ms. Burke's wage discrimination claims using the legal principles applicable in the EPA context. We do so, however, without expressing a view as to the reach of the FPWA.

legitimate, non-discriminatory business reason for failing to pay Ms. Burke equitably"
and that "[GSD] does not pay pursuant to any seniority, merit or quantity/quality of
production system").  This is sufficient "to raise a right to relief above the speculative
level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Riser v. QEP Energy*,
776 F.3d 1191, 1196 (10th Cir. 2015) ("To establish a prima facie case of pay
discrimination under the EPA, a plaintiff must demonstrate that:  (1) she was performing
work which was substantially equal to that of the male employees considering the skills,
duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the
work was performed were basically the same; (3) the male employees were paid more
under such circumstances." (internal quotation marks omitted)).

Of course, Ms. Burke did not name GSD as a defendant in her original complaint.
Liability under the EPA is limited to employers.  *See Peppers v. Cobb Cty.*, 835 F.3d
1289, 1296 (11th Cir. 2016).  And the EPA includes "public agenc[ies]" within the
definition of "employer."  29 U.S.C. § 203(d).  Because Ms. Burke did not sue the agency
she had alleged was responsible for the discrimination, her claim was properly dismissed,
but not for the reasons given by the district court.

Ms. Burke's proposed amended complaint did, however, name GSD as a
defendant.  To complete her state and federal wage discrimination claims, Ms. Burke
should be granted leave to amend on remand.  Leave to amend should include
Ms. Burke's proposed EPA claim, not just the addition of GSD as a defendant.

### B. Retaliation

The retaliation component of Ms. Burke's wage claim does not fare as well.  In regard to retaliation, the district court concluded that Ms. Burke failed to allege that she had engaged in a statutorily protected activity, such as asserting her rights to receive equal pay.  We agree.

It is unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has" opposed or complained of wage discrimination.  29 U.S.C. § 215(a)(3); *Mickelson*, 460 F.3d at 1315 ("To state a prima facie case of [EPA] retaliation, a plaintiff is required to demonstrate:  (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." (brackets and internal quotation marks omitted)).

Granted, Ms. Burke alleged in her complaint that after "question[ing] her gender based pay disparity to her superiors and to others," R. at 14, she was "stripped of her job duties and [was] no longer assigned meaningful work," *id.* at 83.  But we can find no allegations indicating whether her "question[ing]" of pay disparity rose to the level of an actual objection or opposition to pay disparity.  Also missing are allegations of a causal connection between her "question[ing]" and the loss of job duties and meaningful work assignments.  Her complaint provides only a scattered description of events.  Although a plausible claim does not require "detailed factual allegations," there must be "something more than a statement of facts that merely creates a suspicion of a legally cognizable

16

right of action." *Twombly*, 550 U.S. at 555 (brackets, ellipses, and internal quotation marks omitted).  Ms. Burke's proposed amended complaint repeats these pleading defects.

On appeal, Ms. Burke attempts to shift the focus of her retaliation claim from "question[ing]" her superiors, R. at 14, to her filing of "[a]n EEOC charge," Aplt. Opening Br. at 22.  But since we cannot draw from Ms. Burke's complaint or her proposed amended complaint "the reasonable inference" that any of the defendants are "liable for the [retaliatory] misconduct [actually] alleged," *Iqbal*, 556 U.S. at 678, we conclude that the district court did not err in dismissing her retaliation claim and denying leave to amend.[5]

## V.  Whistleblower Protections

New Mexico's Whistleblower Protection Act (WPA) prohibits a public employer from retaliating against an employee because she (1) "communicate[d] . . . information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act"; (2) "provide[d] information to, or testifie[d] before, a public body as part of an investigation, hearing or inquiry into an unlawful or

---

[5] Although the FPWA does not include language prohibiting retaliation, it does provide that "[a] person claiming to be aggrieved by an unlawful discriminatory practice in violation of the [FPWA] may[ ] . . . seek relief under the [New Mexico] Human Rights Act."  N.M. Stat. Ann. § 28-23-4(A)(2).  The Human Rights Act makes it unlawful for a person or employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice."  *Id.* § 28-1-7(I)(2).  Even assuming that either of Ms. Burke's complaints invokes the retaliation proscription contained in the Human Rights Act, her claim nevertheless lacks allegations necessary to qualify as plausible.

improper act"; or (3) "object[ed] to or refuse[d] to participate in an activity, policy or practice that constitutes an unlawful or improper act."  N.M. Stat. Ann. § 10-16C-3.  The district court found Ms. Burke's WPA claim inadequate on two grounds.  We conclude that neither ground completely forecloses her claim.

First, the district court noted that Ms. Burke had identified GSD as a public employer subject to WPA liability despite not naming GSD as a defendant.  That defect is remedied, however, in the proposed amended complaint.  We note too that Secretary Burckle was identified as a public employer subject to liability.  While this is permissible in his official capacity, *see id.* § 10-16C-2(C) (stating that "public employer" includes "every office or officer" of an agency or branch of state government), "the WPA does not create a right of action against a current or former state officer in his or her personal capacity," *Flores v. Herrera*, 384 P.3d 1070, 1073 (N.M. 2016).  Thus, the district court properly dismissed the original WPA claim to the extent GSD was not named as a defendant and others were named in their individual capacities.  And the district court appropriately denied leave to amend insofar as the proposed amended complaint contains WPA allegations against Secretary Burckle, Supervisor Baltzley, Human Resources Director Gallegos, Human Resources Manager Gueths, Dawson, and Hone in their individual capacities.  But the district court should not have dismissed the WPA claim to the extent it designated Secretary Burckle as a § 10-16C-2(C) employer and should not have denied leave to amend to include GSD as a defendant.

Second, the district court erroneously determined that Ms. Burke's WPA claim failed because she did not specify "which communication is the basis for her WPA

claim" or how the defendants retaliated against her.  R. at 489.  Although the original

complaint is prolix and often discursive, the requisite WPA allegations are decipherable.

For instance, Ms. Burke alleged that (1) in April 2014 she notified Secretary Burckle,

Director Gallegos, and Manager Gueths about security concerns, code violations, and

gender harassment, and (2) Supervisor Baltzley soon retaliated against her by

restructuring her job assignments during a project.  *See* R. at 36-37, 42-46.  Baltzley also

allegedly damaged Ms. Burke's credibility and reputation by "ensur[ing] that facts [she]

reported . . . were obscured, downplayed and falsified," *id.* at 84, and that the "retaliatory

action against [her] [occurred] because of these communications," *id.* at 85.  These

allegations, which also appear in the proposed amended complaint, are sufficient to state

a plausible WPA claim.  *See Flores*, 384 P.3d at 1072 (stating that the WPA "prohibits a

public employer from taking retaliatory action against a public employee because the

public employee communicate[d] information about conduct that the public employee

believes in good faith to be unlawful or improper").

Accordingly, on remand the district court should grant Ms. Burke an opportunity

to pursue the WPA claim in her proposed amended complaint, minus the

individual-capacity allegations.

## VI.  Post-Ruling Amendment

Ms. Burke argues that the district court should have given her another chance to

amend after dismissing her original complaint and rejecting her proposed amended

complaint.  While we believe that Ms. Burke should have had another chance to plead her

privacy claim, we conclude that the district court did not abuse its discretion in

19

terminating her equal-protection, due-process, and LMRA claims based on the existing

allegations.  A district court does not abuse its discretion in denying leave to amend when

"it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would

be futile to give [her] an opportunity to amend."  *Gee v. Pacheco*, 627 F.3d 1178, 1195

(10th Cir. 2010) (internal quotation marks omitted).  Ms. Burke's original complaint and

proposed amended complaint each contained over 200 paragraphs of allegations in

support of only a handful of non-complex legal claims.  Yet despite providing an

overabundance of factual information, Ms. Burke failed to plead equal-protection, due-

process, or LMRA claims suggesting plausibility.  Giving her another opportunity to

recast her myriad allegations to support those claims would have been futile.

## CONCLUSION

We affirm the district court's judgment insofar as it (1) dismissed Ms. Burke's

individual-capacity § 1983 claims; (2) dismissed her FPWA discrimination and

retaliation claims; and (3) dismissed her WPA claim against the defendants in their

individual capacities.

We reverse the district court's judgment insofar as it dismissed Ms. Burke's WPA

claim against Secretary Burckle in his official capacity.

We vacate the district court's judgment to the extent it purported to dismiss

non-existent § 1983 claims against Secretary Burckle in his official capacity.

We affirm the district court's decision denying leave to amend except to the extent

it prohibited (1) the addition of FPWA and EPA discrimination claims that named GSD

as a defendant; (2) the naming of GSD in a WPA claim; and (3) the submission of a new amended privacy claim.

Accordingly, we remand for further proceedings as to violation of privacy, wage discrimination, and whistleblowing that are consistent with this Order and Judgment.

Entered for the Court

Jerome A. Holmes
Circuit Judge